**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| JASON SAGGIO, | |
| *Plaintiff*, | CASE NO. 4:22-cv-01005-JAR |
| v. | |
| MEDICREDIT, INC., | |
| *Defendant.* | |

## DEFENDANT'S MEMORANDUM IN SUPPORT OF
## ITS MOTION TO DISMISS OR STRIKE

Plaintiff Jason Saggio's Complaint should be dismissed without prejudice under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction or, alternatively, dismissed with prejudice under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. In the further alternative, the class allegations of the Complaint should be stricken under Fed. R. Civ. P. 12(f).

### INTRODUCTION[1]

Jason Saggio's Complaint is about a single telephone call. Saggio alleges he received a telephone call from Medicredit on his cellular telephone; that a prerecorded message instructed him to press "2" if he was not "Lucy;" that he pressed "2;" and that the call terminated. He does not allege Medicredit ever called him again after that.

Saggio complains that this single telephone call violated the Telephone Consumer Protection Act (the "TCPA," 47 U.S.C. § 227) which prohibits, among other things, "mak[ing]

---

[1] Medicredit here summarizes the allegations of the Complaint. Medicredit does not, at this time, admit or deny any of its allegations. Rather, except as may be expressly noted otherwise, Medicredit assumes the truth of the well-pled factual allegations in the Complaint.

any call (other than a call made for emergency purposes or made with the prior express consent of

the called party) using . . . an artificial or prerecorded voice . . . to any telephone number assigned

to a . . . cellular telephone service[.]" He reasons further that Medicredit's use of an interactive

opt-out mechanism to stop calls stands as evidence that Medicredit routinely and intentionally calls

people without their consent.

Saggio offers that this single call "invaded his privacy and intruded upon his right to

seclusion;" that it "frustrated and upset" him by "interrupting his daily life and wasting his time;"

and that the call "intruded upon and occupied the capacity of Plaintiff's cellular telephone and

depleted its battery" and, moreover, "temporarily seized and trespassed upon Plaintiff's use of his

cellular phone and caused him to divert attention away from other activities to address the call."

The Complaint is due to be dismissed. First, it fails to allege facts supporting his Article

III standing to sue, in that it does not allege a concrete injury-in-fact caused by Medicredit's alleged

violation of the TCPA. Second, it omits to allege facts necessary to show Saggio's plausible

entitlement to relief under the TCPA. Alternatively, if the Complaint is not dismissed, the class

allegations of the Complaint should be stricken.

## LEGAL STANDARD

This motion presents a facial attack on subject matter jurisdiction under Fed. R. Civ. P.

12(b)(1) and challenges whether the Complaint states a claim upon which relief can be granted

under Fed. R. Civ. P. 12(b)(6). The standard applied to both is the same: the Court accepts as true

the well-pled facts of the Complaint to determine whether it plausibly alleges subject matter

jurisdiction or entitlement to relief. *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016)

SL 5715419.2

(in a facial attack under Rule 12(b)(1) "the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)").[2]

**ARGUMENT**

This Court lacks subject matter jurisdiction because Saggio's Complaint does not allege facts that, taken as true, show that he suffered a concrete injury in fact caused by Medicredit's alleged TCPA violation sufficient to confer him with standing to sue Medicredit under Article III of the U.S. Constitution. Should the Court conclude otherwise, the Complaint should be dismissed all the same because it fails to allege facts sufficient to show a violation of the TCPA. In the further alternative, the class allegations of the Complaint should be stricken.

**I.        Saggio has not alleged facts to support his standing to sue.**

"Article III confines the federal judicial power to the resolution of 'Cases' and 'Controversies.'" *TransUnion LLC v. Ramirez*, --- U.S. ---, 141 S.Ct. 2190, 2203 (2021). "For there to be a case or controversy under Article III, the plaintiff must have . . . standing." *Ibid.* The party invoking federal jurisdiction—Saggio here—"bears the burden" of "clearly alleg[ing] facts demonstrating" each element of his standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (ellipses and internal quotations omitted).

To have standing, the "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Ibid.* The availability of a statutorily-created private right of action—such as that granted under the TCPA—"does not affect the Article III standing analysis." *Thole v. US Bank NA*, --- U.S. ---, 140 S.Ct. 1615, 1620 (2020). Rather, "Article III standing requires a concrete injury even in the context of a statutory violation." *Ibid.* (quotation omitted).

---

[2] The standard for striking class allegations is explained in section III of the Argument, *infra*.

3

At issue here are (1) whether Saggio alleged facts to support that he suffered a concrete injury in fact and (2) if so, whether he "suffer[ed] concrete harm because of [Medicredit's alleged] violation of federal law." *TransUnion*, 141 S.Ct. at 2205. Medicredit addresses causation first and then injury.

### A. Saggio has not alleged facts to support that his claimed injuries were caused by Medicredit's alleged TCPA violation.

As noted, Saggio's Complaint alleges that the single call he received "invaded his privacy and intruded upon his right to seclusion;" that it "frustrated and upset" him by "interrupting his daily life and wasting his time;" and that the call "intruded upon and occupied the capacity of Plaintiff's cellular telephone and depleted its battery" and, moreover, "temporarily seized and trespassed upon Plaintiff's use of his cellular phone and caused him to divert attention away from other activities to address the call." For this portion of the brief, Medicredit assumes, counterfactually, that Saggio's allegations are sufficient to support a concrete injury in fact.

Even with that assumption, Saggio fails to show standing because he does not show a causal link between his claimed injuries and Medicredit's alleged "violation of federal law." *TransUnion*, 141 S.Ct. at 2205. To explain why, Medicredit turns first to precisely what it is Saggio claims Medicredit did to violate the TCPA.

47 U.S.C. § 227(b), titled "Restrictions on Use of Automated Telephone Equipment," provides:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States— *** (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice— *** (iii) to any telephone number assigned to a . . . cellular telephone service.

SL 5715419.2

Saggio does not allege Medicredit used an automatic telephone dialing system (or "ATDS").[3] Rather, he alleges that Medicredit used an "artificial or prerecorded voice." Thus, he alleges Medicredit violated the TCPA by "mak[ing] any call" "using an artificial or prerecorded voice" "to any telephone number assigned to a . . . cellular telephone service."

At what point did Medicredit "make" a call using an "artificial or prerecorded voice?" It is not when it dialed the telephone—artificial or prerecorded voices are not, and are not alleged to be, a means to *initiate* a call. And, in fact, the TCPA distinguishes between "mak[ing]" a call "using" an artificial or prerecorded voice, on the one hand, and "initiat[ing]" a call to "deliver a message" "using a prerecorded or artificial voice," on the other hand. 47 U.S.C. § 227(b)(1)(B) (prohibiting certain prerecorded messages to residential telephone lines). Rather, the earliest point at which Medicredit could have violated the TCPA on Saggio's allegations is when it played the recorded message after he answered the phone.

Thus, Medicredit acted lawfully when it dialed the call. And Medicredit acted lawfully at the moment Saggio answered the call. It is only upon playing its prerecorded message that Medicredit could have violated the TCPA.

By the time Medicredit did anything plausibly unlawful—that is, by the time it played its prerecorded message—Saggio's claimed injuries already had come to pass. The phone already had rung and distracted and interrupted Saggio. The call also already had triggered activity on his cellular telephone and commenced whatever trivial and temporary impact it may have had on the phone's "capacity" and "battery life." And while Saggio claims he was "frustrated and upset" by the call, he does not allege he was "frustrated and upset" by the *prerecorded message*, but rather because the call itself "interrupt[ed] his daily life and wast[ed] his time" which, as explained, had

---

[3] As explained below, he also omits to allege an absence of consent, but we put that issue to the side for the moment.

5

already happened. Thus, Saggio has not alleged injuries *caused by* "a violation of federal law." *TransUnion*, 141 S.Ct. at 2205.

What is more, Saggio does not allege that Medicredit's lawful conduct would not have led to the same results. Assume, counterfactually, that instead of a prerecorded message, a live operator had asked him whether he was Lucy. The trivial and temporary impact on Saggio's phone would have been the same. The distraction and interruption would have been the same. Everything would have been the same. In that respect, Saggio's claimed injuries were not the result of a TCPA violation at all, but rather the result of receiving a telephone call.

Thus, Saggio has failed to allege facts that his claimed injuries were the result of Medicredit's alleged TCPA violation. He consequently has not sufficiently alleged his standing to sue and, consequently, this case is due to be dismissed without prejudice under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.

**B.  Saggio has not alleged facts to support a concrete injury in fact.**

While "Congress may enact legal prohibitions and obligations" and may also "create causes of action for plaintiffs to sue defendants who violate those legal prohibitions or obligations," under Article III "an injury in law is not an injury in fact." *TransUnion*, 141 S.Ct. at 2205. Rather, Article III mandates a concrete injury in fact in all cases; indeed, injury in fact is a requirement for a "Case" even to exist. *Ibid.*

All the same, "Courts must afford due respect to Congress' decision to impose a statutory prohibition or obligation on a defendant, and to grant a plaintiff a cause of action to sue over the defendant's violation of that statutory prohibition or obligation." *Id.* at 2204. Through legislation, Congress "may elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate at law." *Id.* at 2204-05 (quotation omitted).

Thus, Congress may "elevate" a real, concrete injury, but it may not create an injury out of whole cloth. "Central to assessing concreteness" in this context "is whether the asserted harm has a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *Id.* at 2200 (quotations omitted). "That inquiry asks whether plaintiffs have identified a close historical or common-law analogue for their asserted injury." *Id.* at 2204. While "an exact duplicate in American history in tradition" is not required, *ibid.*, a theory of injury that "circumvents a fundamental requirement" of the proposed analogue "does not bear a sufficiently close relationship" to the analogue "to qualify for Article III standing." *Id.* at 2210 n.6; *see also*, *e.g.*, *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 48 F.4th 1236, 1244 (11th Cir. 2022) (en banc) (explaining that *TransUnion* "put meat on the bones" of the *Spokeo* approach of comparing an intangible harm to "longstanding torts" by "adding that when an element 'essential to liability' at common law is missing from an alleged harm, the common-law comparator is not closely related to that harm").

As noted, Saggio's Complaint here alleges that the single call he received "invaded his privacy and intruded upon his right to seclusion;" that it "frustrated and upset" him by "interrupting his daily life and wasting his time;" and that the call "intruded upon and occupied the capacity of Plaintiff's cellular telephone and depleted its battery" and, moreover, "temporarily seized and trespassed upon Plaintiff's use of his cellular phone and caused him to divert attention away from other activities to address the call." Medicredit takes from this that Saggio intends to advance invasion of privacy and trespass to chattels as his comparator torts, although he does not expressly state as much. Therefore, Medicredit will show here why those torts are not acceptable analogues, and then address why the additional labels he includes in his Complaint—being "frustrated and upset," and "interrupt[ed]"—also do not move the needle in favor of finding standing.

SL 5715419.2

### 1. **Invasion of privacy.**

"Invasion of privacy" is not a tort, but rather "a general term used to describe four different torts." *Meyerkord v. Zipatoni Co.*, 276 S.W.3d 319, 322 (Mo. App. E.D. 2008), citing *Sullivan v. Pulizer Broadcasting Co.*, 709 S.W.2d 475, 477 (Mo. banc 1986). Saggio's allegations suggest he intends to invoke intrusion upon seclusion.[4] Intrusion upon seclusion, however, requires a substantial intrusion that "would be highly offensive to the ordinary reasonable man, as the result of conduct to which the reasonable man would strongly object." Restatement (Second) of Torts, § 625(B), cmt. d (1977). "Thus, there is no liability for . . . calling [plaintiff] on the telephone on one occasion or even two or three, to demand payment of a debt." *Ibid.* Instead, it is "only when the telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff, *that becomes a substantial burden to his existence*, that his privacy is invaded." *Ibid.* (emphasis added). Plaintiff does not allege that the calls he received were "a substantial burden to his existence" and, consequently, he fails to allege "an element essential to liability" under his comparator tort. *TransUnion*, 141 S.Ct. at 2210 n.6; *Hunstein*, 48 F.4th at 1244.

What is more, the tort also requires an intrusion "upon the solitude or seclusion of another or his private affairs or concerns." Restatement (Second) of Torts, § 625(B). In comment b, the Restatement identifies types of non-physical intrusions upon seclusion that fall within the scope of the tort and they are a far cry from what is alleged here: eavesdropping, spying through a window with binoculars, tapping his telephone line. Nothing of the sort is advanced in Saggio's Complaint; Saggio alleges only one brief telephone call.

---

[4] The others plainly have no application here: appropriation of name or likeness, unreasonable publicity given to private life, or publicity that unreasonably places another in a false light before the public. Restatement (Second) of Torts, § 625A (1977).

SL 5715419.2

And, therefore, the Eleventh Circuit has rejected intrusion upon seclusion as a valid comparator tort to a TCPA claim based on "a single unsolicited text message." *Salcedo v. Hanna*, 936 F.3d 1162, 1171 (11th Cir. 2019). The Court found the plaintiff there lacked standing on two bases, each of which applies with equal force here. The first was the lack of a fit between a TCPA claim and intrusion upon seclusion, as discussed above.

But second, in accordance with *Spokeo*, the Court also considered "the judgment of Congress" by examining the legislative findings supporting the TCPA. *Id.* at 1168-69. The legislative history underscored that "the receipt of a single text message is qualitatively different from the things Congress was concerned about when it enacted the TCPA." *Id.* at 1169. "In particular, the findings in the TCPA show a concern for privacy within the sanctity of the home that do not necessarily apply to text messaging" because "cell phones are often taken outside of the home and often have their ringers silenced, presenting less potential for nuisance and home intrusion." *Ibid.* Further supporting that Congress considered lone communications to cellular telephones qualitatively different from repeated telemarketing calls to residential lines: "Congress found that the FCC should have the flexibility to design different rules for those types of . . . prerecorded calls that it finds are not considered a nuisance or invasion of privacy, , [and], within a year it instructed the FCC that it may exempt calls to a telephone number assigned to a cellular telephone service  that are not charged to the called party." *Ibid.* (internal quotations omitted).

In view of the absence of a proper comparator tort—which we now know from *TransUnion* is enough on its own to end the inquiry—*and* the absence of evidence Congress considered receipt of a single unwanted communication on a cellular telephone to be troublesome, the *Salcedo* Court held the plaintiff lacked standing. *Id.* at 1172. Its determination is correct and the Supreme Court's later *TransUnion* opinion confirms as much.

To be sure, there are cases going the other way—most of them, even. Most important here is *Golan v. FreeEats.com, Inc.*, in which the Eighth Circuit concluded that the named plaintiffs in a TCPA class action had standing to sue based on their receipt of "two answering machine messages." 930 F.3d 950, 958-59 (2019). *Golan* is not controlling here. First, that case—like most holding that receipt of a single communication suffices to confer standing—was decided before *TransUnion* clarified that a statutory action and its proper comparator tort bear a sufficiently close relationship only if the statutory action does not circumvent any essential element of the comparator tort. In *Golan*, the Court undertook no element-by-element analysis of the TCPA action and the proffered comparator tort. And understandably so: the *Golan* opinion issued before *TransUnion*.

Moreover, the comparator tort advanced there was nuisance, not invasion of privacy or trespass to chattels. And, at any rate, there were important factual distinctions. For one thing, the plaintiffs in *Golan* received two answering machine messages, unlike the single brief call at issue here. For another, the calls were directed to *residential* telephone lines rather than to *cellular* telephone lines. *Golan v. Veritas Entertainment, LLC*, 788 F.3d 814, 817 (8th Cir. 2015).[5] As explained, the privacy implications of calls to residences are meaningfully different in kind from those of calls to cellular telephones.

Finally, there is an important difference in the *type* of message Saggio received. In *Golan*, the plaintiffs received an answering machine message. Here, as alleged, Saggio received a collection call with a prompt asking him to push a button if he was not the intended recipient (and, what is more, he alleges he followed the prompt and he does not allege he later received any additional calls). The Federal Communications Commission, which is tasked with implementing

---

[5] The case was before the Eighth Circuit twice. The opinion cited here from 2015 was the first time; the second opinion, in 2019, reexamined standing in the wake of *Spokeo*.

10

regulations under the TCPA, expressly endorses using "an interactive opt-out mechanism in all artificial- or prerecorded-voice calls so that recipients may easily report a reassigned or wrong number" because doing so obviously helps the consumers the TCPA is intended to protect. *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, FCC 15-72, ¶ 86 (July 10, 2015) (the "2015 Ruling").[6] Thus, unlike the message in *Golan*, the message here was designed to permit—and did permit—Saggio to identify that he was not the person Medicredit intended to reach and to stop future calls.

In view of the factual distinctions between this case and *Golan*, and the intervening guidance provided by *TransUnion*, *Golan* is not controlling here. Saggio's offer of intrusion upon seclusion as a proper comparator tort is insufficient because the statutory action he brings circumvents key elements of that tort, and because the judgment of Congress does not support use of intrusion upon seclusion as a proper comparator tort, all as explained in *Salcedo*.

### 2. Trespass to chattels.

Saggio appears also to advance trespass to chattels as a comparator tort, alleging that the single call he received "temporarily seized and trespassed upon Plaintiff's use of his cellular phone." Trespass is not a good fit either.

*Salcedo* is again instructive, rejecting trespass to chattels and similar torts as proper comparators for multiple reasons, chief among them that the tort requires deprivation of use "for a substantial time." 936 F.3d at 1172. Not identified in *Salcedo*, but nonetheless important, is that trespass to chattels mandates a physical deprivation. *Pope v. Cordell*, 47 Mo. 251 (1871) ("to constitute trespass . . . in the case of personal property" requires "an actual taking, a physical

---

[6] The 2015 Ruling later was held invalid, in part, in *ACA Intl. v. FCC*, 885 F.3d 687, 706-07 (D.C. Cir. 2018). Tellingly, it was held invalid in pertinent part because it was arbitrarily and capriciously burdensome to callers, in that it provided that callers could be liable for calls to reassigned numbers when the caller had prior express consent from the prior owner, even if the caller had no reason to know of the reassignment.

seizing or taking hold of the goods, removing them from their owner, or by exercising a control or authority over them inconsistent with their owner's possession"). None of that is alleged here, nor could it be. After all, today's cellular telephones are capable of fielding multiple calls at once. Thus, trespass to chattels is not a proper comparator tort either.

### 3. Emotional distress labels.

Finally, Saggio alleges that he was "frustrated and upset" by the call and that it distracted him and wasted his time. These labels do not suffice to show a concrete injury.

That Saggio was "frustrated and upset" cannot work because it would be tantamount to granting universal standing that unconstitutionally would erase the limitations of Article III. It "is hard to imagine that anyone would file any lawsuit without being annoyed (or worse)." *Gunn v. Thrasher, Buschmann & Voelkel, PC*, 982 F.3d 1069, 1072 (7th Cir. 2020). "If that were enough, however, then the very fact that a suit had been filed would show the existence of standing, and the need to have a concrete injury that could be cured by a favorable judicial decision would be abolished." *Ibid.*

Nor can distraction or waste of time carry the day, particularly under the one-call-harmed-me theory Saggio advances here. The Fifth Circuit recently addressed and rejected a similar theory where the plaintiff claimed that she wasted time consulting a lawyer after receiving a letter she alleged violated the Fair Debt Collection Practices Act. *Perez v. McCreary, Veselka, Bragg & Allen, PC*, 45 F.4th 816, 825 (5th Cir. 2022). But, the plaintiff there, like Saggio here, did not "offer a common-law analog to the time-based injury she claims to have suffered" and thereby failed to meet "her burden to demonstrate that she has standing." *Ibid.* (cleaned up). "After all," the Court reasoned, "how can we decide whether two harms have a 'close relationship' if we don't know what one of them is?" *Ibid.* The Court properly recognized that it is the job of the party

12

asserting jurisdiction to demonstrate standing, not the job of courts "to conjure up possible theories that could carry a litigant's burden." *Ibid.* (quotation omitted). Moreover, the Court could not identify "any tort that makes a person liable for wasting another's time." *Ibid.*[7]

Saggio may not circumvent the limitations of Article III merely by affixing labels like frustration to his Complaint. He has failed to allege facts sufficient to support his standing.

### 4.   Separation of powers concerns also counsel against finding standing.

For the reasons explained, Saggio fails under existing precedent to plead facts clearly demonstrating his standing under Article III. Even if that was not so, other constitutional considerations warrant caution here. In particular, by purporting to delegate to private individuals the ability to pursue penalties under the TCPA, Congress encroaches on the powers and duties vested to the President under Article II's Take Care clause. Medicredit acknowledges that Congress may create statutory actions providing for awards of statutory damages, but to survive constitutional muster, Congress must exercise exceptional caution not to deputize the public at large to enforce its legislation. Certainly, authorizing uninjured private parties to sue for statutory violations runs afoul of the premise. That risk, coupled with the presumption *against* federal jurisdiction,[8] further support that this Court may not properly entertain this action.

Here, Medicredit first examines applicable restraints on delegating the duties and powers assigned exclusively to the Executive Branch under the Take Care Clause and the policies supporting those restraints. It then returns to the TCPA—in particular its private right of action— to explain why permitting this case to proceed would undermine the constitutional structure.

---

[7] The Court did, however, leave the matter open for future litigants to identify a proper comparator tort. *Ibid.*
[8] *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (federal courts "are courts of limited jurisdiction" and it "is to be presumed that a cause lies outside of this limited jurisdiction").

    a.   **The Take Care Clause, and the applicable restraints on delegating the powers and duties it provides.**

Sections 1 and 3 of Article II provide that "[t]he executive power shall be vested in a President" who "shall take Care that the Laws be faithfully executed." That power and duty is broad and it includes not only criminal prosecutions, *Seila Law LLC v. Consumer Fin. Prot. Bureau*, --- U.S. ---, 140 S.Ct. 2183, 2200 (2020), but also other exercises of coercive power like civil enforcement actions, *see, e.g.*, *Heckler v. Chaney*, 470 U.S. 821, 832 (1985). And, a key component of that power—both as to criminal prosecutions and civil enforcement—is the discretion whether to prosecute. *See ibid.*

A corollary of the Vesting Clause is that the executive power may not be vested by Congress to anyone else; it rests solely with the President.[9] *Sierra v. City of Hallandale Beach, Florida*, 996 F.3d 1110, 1133 (11th Cir. 2021) (Newsom, J., concurring), quoting *Martin v. Hunter's Lessee*, 14 U.S. (1 Wheat.) 304, 329-30 (1816) (Story, J.). As such, the power also cannot be placed in the hands of those, such as private individuals, acting free of government supervision. *See, e.g.*, *Morrison v. Olson*, 487 U.S. 654, 692 (1988) (recognizing that attempt by Congress to "completely strip[] from the President" the power to remove an executive official would unconstitutionally impede the President's fulfillment of the Take Care duties); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 577 (1992) (to "permit Congress to convert the undifferentiated public interest in executive officers' compliance with the law into an 'individual right' vindicable in the courts is to permit Congress to transfer from the President to the courts the Chief Executive's most important constitutional duty, to 'take Care that the Laws be faithfully executed.'"); *see also id.* at

---

[9] And, of course, to such officers as the President may designate *provided* that the President retains control over them and the power to remove them, lest the executive power slip into hands unconstrained by the electorate. *Seila Law*, 140 S.Ct. at 2191-92.

604 (Blackmun, J., dissenting) ("To prevent Congress from conferring standing for 'procedural injuries' is another way of saying that Congress may not delegate to the courts authority deemed 'executive' in nature")

The importance of keeping prosecutorial discretion in the hands of the President cannot be overstated. The President is subject to "legal and political checks" inapplicable to private individuals. Tara Leigh Grove, *Standing as an Article II Nondelegation Doctrine*, 11 U. Pa. Const. L. J. 781, 824 (2009) (hereafter, "Grove"). Accordingly, unchecked private standing to sue could lead to discriminatory and unaccountable enforcement efforts. *Id.* at 817-18.

It is equally clear, though, that private individuals may, in proper cases, sue under federal laws to enforce *private* rights. And that returns us to standing: one who suffers a concrete injury from a violation of federal law may sue without running afoul of separation of powers and the Take Care Clause *because* she is not given freewheeling power to sue simply to vindicate federal law—a task reserved to the President. Grove, 11 U. Pa. Const. L. J. at 828.

### b.   Finding standing here would undermine the separation of powers.

The Take Care Clause matters here because it underscores the limitations on Congress' ability to elevate injuries in a way that confers standing to sue. Too relaxed an approach invites Congress to grant standing to individuals with "injuries" that are trivially close to no injury at all, thus inviting Congress to assume control of the execution of the laws by deputizing and incentivizing private individuals to sue.

That brings us back to this case. As explained, Saggio's claimed injuries are not injuries at all, but even if they were they are trivially close to no injury at all. He received a single telephone call.

If the TCPA simply permitted Saggio to recover his actual damages, that would not matter. But the TCPA's private right of action purports to grant a private right of action "to recover for actual monetary loss" resulting from the violation "or to receive $500 in damages for each such violation, *whichever is greater*," with the amount of statutory damages available increasing to $1500 per violation in cases of willful or knowing violations.[10] 47 U.S.C. § 227(b)(3) (emphasis added). In other words, the TCPA purports to grant Saggio the right to recover $500 for each proven violation of the TCPA, regardless of the degree of actual harm.

On that score, Saggio is suing not to recover damages for his injury, but rather to vindicate the law itself. Indeed, he even advances as much in his Complaint, urging that "the sheer volume of illegal calling overwhelms the enforcement efforts of government agencies" and therefore that "private consumer actions, which Congress authorized when it enacted the TCPA in 1991, play a critical role in combatting illegal calling." The Eighth Circuit agrees, holding that statutory damages under the TCPA are "at least in part, an incentive for private parties to enforce the Act" and that because "the actual losses associated with individual violations of the Act are small, this added incentive is necessary . . . . for aggrieved parties to act as private attorneys general." *Universal Underwriters Ins. Co. v. Lou Fusz Automotive Network, Inc.*, 401 F.3d 876, 881 (8th Cir. 2005).

Thus, § 227(b)(3) invites private litigants like Saggio who have no injury or only a trivial injury to enforce the TCPA where the President may elect not to do so, in contravention of the settled law that Congress *may not* delegate the President's powers and duties under the Take Care Clause. Against that backdrop, it becomes all the more important to insist on a clear and potent injury in fact before finding standing under the TCPA. For these reasons, even if the Court

---

[10] And, notably, unlike other federal consumer protection laws, the private right granted in § 227(b)(3) is not expressly limited to those harmed or even affected by a violation.

considers that this case presents a close call under Article III authorities, it should err on the side of finding no standing. Holding otherwise would invite Congress and the Courts to intrude impermissibly on the President's powers and duties under the Take Care Clause.

### 5. Saggio has not sufficiently alleged that putative class members have standing.

"Every class member must have Article III standing in order to recover individual damages." *TransUnion*, 141 S.Ct. at 2208. Thus, "a class cannot be certified if it contains members who lack standing" and, conversely, if "members who lack the ability to bring a suit themselves are included in a class, the court lacks jurisdiction over their claims." *Johannessohn v. Polaris Industries Inc.*, 9 F.4th 981, 987 (8th Cir. 2021) (quotations omitted).[11]

Whatever the merits of Saggio's allegations of his own injury—and there are none—no such allegations are included in the Complaint as to the putative class members. Rather, the sole allegation is that they "suffered actual damages"—a far cry from "clearly alleg[ing] facts demonstrating" each element of their standing. *Spokeo*, 578 U.S. at 338.

Nor can similar "injuries" be inferred for each member of a class that, in Saggio's telling, numbers "in the hundreds if not thousands." While it may be true—and for purposes of this Motion Medicredit assumes that it is—that Saggio objected to receiving a recorded message, it is not obviously the case that others would object and likely many would not. That is particularly so in the circumstances here, where the prerecorded message offered an option to terminate the call with the push of a button if the person who answered was not the person Medicredit intended to reach. What is more, while the TCPA proscribes such calls made without prior express consent, it may

---

[11] Medicredit addresses in section III, *infra*, why it is appropriate to consider this issue now.

SL 5715419.2

well prove—and likely will be the case—that certain putative class members did not object to the calls even if they did not provide their prior express consent.

Saggio's own standing, if he has it at all, rests on shaky ground. To the extent his injury exists, it is a trivial one. But he purports to advance a claim not only on his own behalf, but on behalf of a putative class whose members' standing is not clearly alleged and in many instances likely does not exist at all.

> ### 6.  Saggio also has not shown standing to pursue injunctive relief, either for himself or for putative class members.

Standing "is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion*, 141 S.Ct. at 2208. A "person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial." *Id.* at 2210. A plaintiff satisfies this burden by alleging facts supporting that the future harm is "clearly impending." *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 414 n.5 (2013); *see also, e.g.*, *Mackey v. Belden, Inc.*, 2021 WL 3363174 *5 (E.D. Mo. Aug. 3, 2021) (Ross, J.) (applying *Clapper*'s "clearly impending" standard).

Saggio does not allege an imminent risk of substantial future harm. He alleges he received only one telephone call and that he pushed a button to alert the caller that he was not the intended call recipient. He does not allege he was called again nor does he identify any facts to support that he is likely to be called again.

Courts are uniform in holding that past injury alone does not suffice to demonstrate standing for injunctive relief. *See, e.g.*, *Frost v. Sioux City, Iowa*, 920 F.3d 1158, 1161-62 (8th Cir. 2019) and cases cited therein; *Berni v. Barilla S.p.A.*, 964 F.3d 141, 147 (2d Cir. 2020); *Stringer*

*v. Whitely*, 942 F.3d 715, 721 (5th Cir. 2019). But past "injury" is all Saggio offers. He therefore fails to allege facts supporting his standing to pursue injunctive relief, either individually or on behalf of a putative class. *See, e.g.*, *Stringer*, 942 F.3d at 721 (whether injunction might "prevent future injury to others is irrelevant; plaintiffs seeking injunctive relief must show a continuing or threatened future injury to themselves").

*     *     *

Neither the judgment of Congress nor history supports that Saggio has standing to sue here. Accordingly, his Complaint is due to be dismissed without prejudice under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. Should the Court disagree, the Complaint should be dismissed with prejudice, under Fed. R. Civ. P. 12(b)(6), for failure to state a claim, as explained in section II, below.

## II.    Saggio has not alleged facts sufficient to demonstrate a TCPA violation.

To "establish a prima facie claim under the TCPA, [a plaintiff] must prove that: (1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system [or artificial or prerecorded voice]; (3) without the recipient's prior express consent." *Zean v. Fairview Health Servs.*, 149 F. Supp. 3d 1129, 1132 (D. Minn. 2016) (internal quotation omitted).[12]

---

[12] On appeal, the Eighth Circuit declined to determine whether "prior express consent" is an element of a TCPA claim, as the district court held, or an affirmative defense, as some other courts have held. *Zean v. Fairview Health Servs.*, 858 F.3d 520, 525 n.3 (8th Cir. 2017). It has not since weighed in. This Court has held that consent is an affirmative defense. *St. Louis Heart Ctr., Inc. v. Forest Pharm., Inc.*, 2013 WL 1076540 *2 n.2 (E.D. Mo. Mar. 13, 2013). Respectfully, the *Zean* district court got it right and its conclusion is supported also by two other points that Court did not consider. First, Congress knows how to identify affirmative defenses and, in fact, did so expressly elsewhere in the TCPA. *See* 47 U.S.C. § 227(c)(5). Second, *St. Louis Heart* incorrectly relied on FCC regulations to establish who bears the burden of persuasion on consent. The Court advanced no authority—and Medicredit is aware of none—to support that an executive agency, rather than Congress or the courts, may finally determine what is an affirmative defense rather than an element of an action. *Accord*, *Aqua Prods., Inc. v. Matal*, 872 F.3d 1290, 1323-24 (Fed. Cir. 2017) (en banc) (plurality op.) (statutory grant of authority to promulgate "standards and procedures" not broad enough to permit agency to determine which party bears burden of proof and, at any rate, an agency's resolution of the question is a "[p]ure question of law" entitled to no deference because it "reside[s] firmly within the expertise of Article III courts").

19

Here, Saggio's Complaint does not allege absence of prior express consent. Certainly it hints at it, alleging that Saggio "has no account or business relationship with Medicredit." But even accepting that allegation as true and drawing from it the inference that Saggio himself did not consent does not end the inquiry. The TCPA permits prerecorded messages to cellular lines with consent of the "called party." 47 U.S.C. § 227(b)(1)(A)(iii). The term "called party" does not mean the actual recipient or the intended recipient of the call; rather, the term means the "subscriber, *i.e.*, the consumer assigned the telephone number dialed and billed for the call" or "non-subscriber customary user of a telephone number included in a family or business calling plan." 2015 Ruling, ¶ 73. Saggio does not allege that the subscriber did not consent, or that a non-subscriber customary user of the telephone number in a family or business calling plan did not consent.

Because Saggio failed to plead absence of consent, he fails to state a plausible claim to relief and his Complaint is due to be dismissed with prejudice under Fed. R. Civ. P. 12(b)(6).

## III.  Alternatively, the class allegations should be stricken.

Should the Court determine that Saggio has standing and states a plausible claim to relief, the Court then should strike the class allegations from the Complaint. While there are numerous, serious hurdles to managing the proposed class action, Medicredit here advances only those evident at the pleading stage. The first is absence of predominance and cohesiveness resulting from the individualized inquiries required to assess whether putative class members have standing and whether they consented, or did not consent, to contact such that they are or are not members of the putative class. The second is that the proposed class definition is an impermissible fail-safe class.

Class allegations should be stricken from a complaint at the pleading stage when it is "apparent from the pleadings that the class cannot be certified." *Donelson v. Ameriprise Fin. Servs., Inc.*, 999 F.3d 1080, 1092 (8th Cir. 2021).

SL 5715419.2

### A.  Absence of predominance and cohesiveness.

Saggio seeks class-wide damages under Fed. R. Civ. P. 23(b)(3) and class-wide injunctive relief under Fed. R. Civ. P. 23(b)(2). Under Rule 23(b)(3), "questions of law or fact common to class members [must] predominate over any questions affecting only individual members"—a "demanding" standard. *Hudock v. LG Electronics USA, Inc.*, 12 F.4th 773, 776 (8th Cir. 2021) (quotations omitted). Under Rule 23(b)(2), class claims must be "cohesive" and the "existence of a significant number of individualized factual and legal issues defeats cohesiveness and is a proper reason to deny class certification." *Donelson*, 999 F.3d at 1093 (quotations omitted). The cohesiveness requirement under Rule 23(b)(2) "is more stringent than the predominance and superiority requirements" under Rule 23(b)(3). *Ibid.* (quotations omitted).

Here, there are two issues that plainly preclude predominance and cohesiveness, even at this early stage. The first is whether putative class members have standing, as addressed above in section I. While Saggio advances that the putative class numbers in the hundreds or thousands, he does not advance facts to support that each putative class member was offended by receiving a prerecorded message, nor could he do so. As explained, many people would not be offended by receiving a prerecorded message—especially the one at issue in this case.

The second is consent. As explained, the TCPA permits use of prerecorded messages when the called party consents to same. Where consent (or absence of consent) is not susceptible to common proof on a class-wide basis, the predominance and cohesiveness requirements cannot be satisfied. *See, e.g.*, *Ung v. Universal Acceptance Corp.*, 319 F.R.D. 537, 539-41 (D. Minn. 2017).

This is just such a case. According to Saggio, Medicredit is a debt collector, not a first-party creditor. As a consequence, Medicredit does not have a direct relationship with the consumers it contacts. That does not mean, however, that Medicredit lacks consent to call the

21

consumers it contacts; consent "may be obtained by and conveyed through an intermediary" such as a first-party creditor. *Id.* at 539-40 (quotations omitted). And that consent may be obtained in a variety of ways, including written consent, verbal consent, or even simply by a consumer voluntarily providing her cellular telephone number in respect of a particular transaction. *Id.* at 540.

Thus, assessing whether a given class member consented, or did not consent, to receiving a pre-recorded message will necessitate an individualized review of (a) the source of consent and (b) the sufficiency of consent. There is no shortcut. Nor, for that matter, does Saggio even allege facts to support that the issue of consent is susceptible to class-wide, common proof.

Medicredit fully recognizes that TCPA classes have been certified before. But those cases rested on different facts that made the issue of consent susceptible to class-wide, common proof. Where "consent [is] achieved through a common method, courts have generally found the common question of consent to be capable of classwide resolution." *Hand v. Beach Entertainment KC, LLC*, 456 F. Supp. 3d 1099, 1146 (W.D. Mo. 2020). Conversely, where there is a variety of "potential consent mechanisms," "requisite consent [cannot] be established with class-wide proof." *Ibid.* As explained, Medicredit is not alleged to have a direct relationship with the consumers it contacts and, consequently, this case does not and cannot present "a pattern of alleged consent that is uniform across the class and amenable to class-wide resolution." *Id.* at 1147.[13]

The class allegations therefore are due to be stricken.

### B.  The proposed class definition is a fail-safe class.

"A fail-safe class is one that would allow putative class members to seek a remedy but not be bound by an adverse judgment—either those class members win or, by virtue of losing, they

---

[13] While this analysis focuses on predominance under Rule 23(b)(3), it applies with even greater force to the more stringent cohesiveness requirement of Rule 23(b)(2).

SL 5715419.2

are not in the class and are not bound." *Vogt v. State Farm Life Ins. Co.*, 963 F.3d 753, 768 (8th Cir. 2020). In the context of the TCPA, courts uniformly hold that classes defined in part by the absence of consent—like Saggio's proposed class here—are impermissible fail-safe classes. *Adam v. CHW Group, Inc.*, 2021 WL 7285905 *11 (N.D. Iowa Sep. 9, 2021) (collecting cases). For this additional reason, Saggio's class allegations are due to be stricken.[14]

*   *   *

Consent is a key issue in this case—perhaps *the* key merits issue. It cannot be resolved through common class-wide proof, but rather would necessitate a series of mini-trials—one for each putative class member—to determine not only whether the class member is entitled to relief but also to determine whether she is a class member at all. A class therefore cannot be certified under Rule 23(b)(2) or 23(b)(3). And that is before one even considers the individualized proof required to determine whether putative class members even have standing, and the fact that the current proposed class definition is an impermissible fail-safe class. The class allegations therefore are due to be stricken.

## CONCLUSION

Saggio lacks standing and fails to allege facts to state a plausible claim under the TCPA. The case therefore is due to be dismissed. If it is not, however, the class allegations in the Complaint should be stricken.

---

[14] In *Adam*, the plaintiff was given leave to amend to redefine his proposed classes in an appropriate manner. If Saggio considers that he can do the same—and the case is not otherwise due to be dismissed or the class allegations stricken— Medicredit has no objection to the Court granting Saggio leave to try to do so.

SL 5715419.2

Respectfully submitted,

SPENCER FANE LLP

By:     /s/ Ryan C. Hardy
        Ryan C. Hardy, 62926
        1 N. Brentwood Blvd., Suite 1000
        St. Louis, MO 63105
        Tel: 314-863-7733
        Fax: 314-862-4656
        rhardy@spencerfane.com

        *Counsel to Defendant*

## CERTIFICATE OF SERVICE

I certify that on this 18th day of November 2022 I filed the foregoing electronically with the Clerk of Court via ECF, which caused a copy of same to be served electronically on all counsel of record with notice of case activity generated.

/s/ Ryan C. Hardy

SL 5715419.2