UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JASON SAGGIO and JUDE FURR, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Case No. 4:22-CV-01005-JAR |
| vs. | ) |
| | ) |
| MEDICREDIT, INC., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiffs motion for class certification in this action brought under the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227. (Doc. 101). For the reasons stated below, the Court will grant the motion with an amendment to the class period.

## BACKGROUND

The TCPA prohibits robocalls to cellphones except in emergencies or with the recipient's consent. 47 U.S.C. § 227(b)(1)(A)(iii). Plaintiffs Jason Saggio and Jude Furr, on behalf of a proposed nationwide class, allege that Defendant Medicredit, a medical debt collector, erroneously and unlawfully placed robocalls to their cellphones to collect debts they didn't owe.[1]

This is a "wrong number" case. On July 13, 2022, Saggio received a call meant for someone named Lucy. When prompted, he pressed "2" to indicate that he wasn't Lucy. From June to August 2023, Furr received numerous calls from Medicredit and he told employees to

---

[1] Though not explicitly spelled out in the pleadings, the Court generally understands that a patient/debtor gives consent to be pursued for unpaid medical debt when she signs financial guarantees and provides her contact information to her healthcare provider (Medicredit's customer) at the time of treatment. Medicredit vaguely confirms that a patient gives consent at the time of service. (Doc. 106 at 3).

stop calling at least twice. Despite his requests, the calls continued, and he received several pre-recorded voicemails. Furr eventually called Medicredit and spoke to an employee who told him that the calls were meant for a person named Mena.

Saggio filed the instant complaint in September 2022. Furr's case was consolidated in May 2024. (Doc. 82). Plaintiffs plead that the calls intruded upon and occupied the capacity of their cellphones, depleted their batteries, temporarily seized and trespassed upon their phones, and diverted their attention from other activities. (Doc. 85). They seek statutory damages of $500 per call and $1,500 for each call placed knowingly or willfully in violation of the TCPA, as well as declaratory and injunctive relief. Plaintiffs propose a class defined as follows:

> All persons and entities throughout the United States (1) to whom Defendant placed a call in connection with a past-due medical debt, (2) directed to a number assigned to a cellular telephone service, but not assigned to a person with a past-due medical debt or their authorized representative, (3) with an artificial or prerecorded voice, (4) from September 26, 2018 through the date of class certification and, which claims have not otherwise been previously released.

(Doc. 85). The last phrase referring to previously released claims carves out claims settled in an earlier TCPA class action against Medicredit. That case was filed in 2020 for a class period from December 16, 2017, to July 7, 2022. Final judgment was entered in February 2023. *Miles v. Medicredit, Inc.*, No. 4:20-CV-1186-JAR, 2023 WL 1794559, at *1 (E.D. Mo. Feb. 7, 2023).

In September 2023, Medicredit began using the Federal Communication Commission's Reassigned Numbers Database (RND) to "scrub" its call list on a monthly basis. (Doc. 101-2 at 24). Medicredit invokes this practice as an affirmative defense under 47 C.F.R. 64.1200(m), which provides a safe harbor from liability for RND users who made calls to numbers previously associated with a consenting owner before a subsequent transfer to a different owner.

In discovery, Medicredit produced spreadsheets of phone numbers designated as wrong numbers robocalled during the class period. After briefing on the instant motion, the Court

2

ordered Medicredit to produce more detailed call logs reflecting the dates and number of calls to each wrong number. (Doc. 125). Plaintiffs' expert, Carla Peak, explained in her report and deposition that these call logs can be utilized to identify and notify class members through a reverse look-up process to locate names and addresses associated with the cellphone numbers identified as wrong numbers. Individual plaintiffs would then identify themselves as class members by responding to the notice.

Medicredit opposes class certification, principally arguing that individual issues overwhelm common issues particularly as to the ascertainability of proper plaintiffs. For instance, reverse look-up searches sometimes identify multiple individuals linked to a single phone number. Dates of ownership might be inaccurate in a database. The call recipient could be a family member on a joint phone plan or a former subscriber before a transfer of ownership. Or, a bona fide debtor may have provided a spouse's or caregiver's number. Medicredit contends that these uncertainties preclude class treatment.

## LEGAL STANDARDS

Rule 23(a) allows individuals to sue on behalf of a class if: (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law and fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately protect the interests of the class (adequacy). Fed. R. Civ. P. 23(a).

If the foregoing criteria are satisfied, Rule 23(b)(3) permits a class action when the court finds that (1) questions of law or fact common to class members predominate over any questions affecting individual members (predominance) and (2) a class action is superior to other methods for fairly and efficiently adjudicating the controversy (superiority). Fed. R. Civ. P. 23(b)(3).

Relevant considerations include (A) class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any related litigation already pending; (C) the desirability of concentrating claims in the forum; and (D) likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A)-(D). "An individual question is one on which evidence varies from member to member; a common question is one where the same evidence suffices for each member to make a *prima facie* showing." *Ford v. TD Ameritrade Holding Corp.*, 115 F.4th 854, 859 (8th Cir. 2024).[2]

Certification of a class is proper only if, after "rigorous analysis," the Court finds that Rule 23 requirements are met. *Douglas Phillip Brust, D.C., P.C. v. Opensided MRI of St. Louis LLC*, 343 F.R.D. 581, 587 (E.D. Mo. 2023) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011)). The court considers the merits only to the extent relevant to the determination whether Rule 23 is satisfied. *Id*. (citing *Dukes*, 564 U.S. at 351 n.6). The burden rests with the plaintiff. *Id*.

While class certification is normal in TCPA litigation, there are no invariable rules regarding the suitability of a particular action for class treatment. *Id*. The court considers the unique facts of each case. *Id*.

## ANALYSIS

### Ascertainability

Inherent in Rule 23 is the "elementary" requirement that a class "must be adequately defined and clearly ascertainable." *Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 996 (8th Cir. 2016). Medicredit argues that Plaintiffs' proposed class is not ascertainable from evidence common to the class insofar as individual testimony would be required to identify

---

[2] Throughout this order, quotations have been cleaned up and internal citations are omitted unless otherwise noted.

4

each plaintiff who actually received a robocall from Medicredit without consent. In short, Medicredit contends that the class isn't ascertainable because the evidence might not accurately identify every class member.

The Eighth Circuit rejected this theory in *Sandusky*. There, the defendant sent unsolicited fax advertisements to business numbers obtained from a directory of healthcare providers. 821 F.3d at 994. The plaintiffs asserted that the list of numbers was sufficient to identify class members. The district court disagreed, reasoning that the parties would need to explore who owned, operated, and used the fax machines associated with the numbers, necessitating individualized inquiry to determine who actually received a fax. *Sandusky Wellness Ctr. LLC v. Medtox Sci., Inc.*, 2014 WL 3846037, at *4 (D. Minn. Aug. 5, 2014). The Eighth Circuit reversed, reasoning that the best *objective* indicator of the recipient is the person who subscribed to the number. *Sandusky*, 821 F.3d at 997 (emphasis added). "True, the subscriber … may not be the recipient of the fax. However, fax logs showing the numbers that received each fax are *objective criteria* that make the recipient clearly ascertainable." *Id*. (emphasis added). The court further reasoned that any recipients who didn't have rights under the TCPA just wouldn't be entitled to share in any damages. *Id*. at 998 (citing *Arnold Chapman & Paldo Sign & Display Co. v. Wagener Equities Inc.*, 747 F.3d 489, 492 (7th Cir. 2014)). "How many (if any) of the class members have a valid claim is the issue to be determined ***after*** the class is certified." *Chapman*, 747 F.3d at 492) (emphasis original).[3] Citing *Sandusky* and *Chapman*, the Western District of

---

[3] Medicredit's standing argument fails for the same reason. *See Brust*, 343 F.R.D. at 590-91 (collecting cases). The case cited by Medicredit, *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259 (11th Cir. 2019), is distinguishable. There, class members who didn't place themselves on the do-not-call registry couldn't claim injury and therefore lacked standing, just as recipients of Medicredit's robocalls who owe medical debt wouldn't have standing in this case. Those individuals can be identified from Medicredit's records and are excluded from the class definition, which is properly limited to recipients of misdirected calls to non-debtors.

5

Missouri found a class of text recipients ascertainable using the defendant's records and excluding anyone who responded to a text affirmatively. *Hand v. Beach Ent. KC, LLC*, 456 F. Supp. 3d 1099, 1138-39 (W.D. Mo. 2020). Other district courts have found TCPA classes ascertainable using Peak's reverse look-up process and ultimately granted certification. *Wesley v. Snap Fin. LLC*, 339 F.R.D. 277 (D. Utah 2021); *Head v. Citibank, N.A.*, 340 F.R.D. 145 (D. Ariz. 2022).

Medicredit attempts to avoid *Sandusky*'s binding instruction by citing *St. Louis Heart Ctr., Inc. v. Vein Centers for Excellence, Inc.*, No. 4:12 CV 174 CDP, 2017 WL 2861878 (E.D. Mo. July 5, 2017), where the court decertified a class for lack of ascertainability. There, however, the evidence provided only the number of faxes sent; there were no logs specifying which fax numbers received a successful transmission. *Id*. at *4. By contrast here, Medicredit's call logs identify cellphone numbers designated as wrong numbers and the dates of robocalls to those numbers, among other particulars. These are objective indicators to identify potential class members. The Court thus finds the proposed class sufficiently ascertainable.

### **Numerosity**

Rule 23(a)(1) requires that the members of a class be so numerous as to make joinder impractical. Fed. R. Civ. P. 23(a)(1). According to Plaintiffs, discovery revealed nearly 300,000 robocalls that Medicredit later identified as wrong numbers. (Doc. 96, Ex. 4-5). Medicredit doesn't challenge Plaintiffs' motion on this criterion, and the Court finds it satisfied.

### **Commonality**

Rule 23(a)(2) requires that the members of a class be united by a common question of law or fact. Fed. R. Civ. P. 23(a)(2). "Commonality requires a showing that class members have suffered the same injury." *Powers v. Credit Mgmt. Servs., Inc.*, 776 F.3d 567, 571 (8th Cir.

2015). What matters is the capacity of a class action to generate common answers to resolve the litigation. *Id.* The common contention "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Webb v. Exxon Mobil Corp.*, 856 F.3d 1150, 1156 (8th Cir. 2017).

In support of its motion, Plaintiffs identify questions common to all class members as to whether Medicredit (1) used an artificial or prerecorded voice to call cellphones, (2) obtained the recipient's consent to place the calls, and (3) placed the calls willfully or knowingly without consent. As common evidence to answer these questions, Plaintiffs identify Medicredit's prerecorded call scripts, call logs, disposition lists (i.e., numbers designated as wrong numbers), and representative testimony describing Medicredit's relevant business practices.

In response, Medicredit asserts that commonality is lacking for the same reasons that the class isn't ascertainable, theorizing that individual inquiry will be needed to identify proper plaintiffs. For example, a call recipient might press "2" to indicate a wrong number when in fact he owes a valid medical debt. This argument is not persuasive, particularly in light of *Sandusky*, where the Eighth Circuit readily found the fax-recipient class to meet the commonality requirement. "A common contention, capable of classwide resolution, is whether class members received an unsolicited fax advertisement violating the TCPA." *Sandusky*, 821 F.3d at 998. *See also Brust*, 343 F.R.D. at 592 (granting certification of a class of fax recipients); *Hand*, 456 F. Supp. 3d at 1150 (granting certification to a class of text recipients).

Similarly here, the common contention is that class members received a non-consensual robocall violating the TCPA, and the inquiry is whether common questions of liability can be answered by common evidence. The Court finds that they can. Medicredit's call logs provide

7

common evidence of scripted robocalls to wrong numbers and the dates of such calls. The reverse look-up process identifies potential plaintiffs associated with each number. This evidence is sufficient to determine whether and when robocalls were placed to a number unassociated with a medical debt and whether they continued after the number was flagged as a wrong number. The speculative possibility that a given subscriber wasn't the actual recipient does not preclude certification. *Sandusky*, 821 F.3d at 997-98. Legitimate debtors can be excluded from the class using Medicredit's own database.  Likewise, Medicredit's RND records can be used to support its affirmative defense with respect to specific reassigned numbers. *Stuart v. State Farm Fire & Cas. Co.*, 910 F.3d 371, 375 (8th Cir. 2018) (noting that an affirmative defense specific to some class members doesn't preclude certification). "[C]ross-referencing records is precisely the type of objective analysis that makes an issue capable of class-wide resolution." *Hand*, 456 F. Supp. 3d at 1150. And, of course, all members of the defined class of cellphone robocall recipients who didn't owe medical debt will have suffered the same injury. Following the Eighth Circuit's binding instruction in *Sandusky*, the Court finds that commonality is established for Plaintiffs' claims.

### Typicality

Rule 23(a)(3) requires that the named plaintiff's claims are typical of the class. Fed. R. Civ. P. 23(a)(3). "Typicality is fairly easily met so long as other class members have claims similar to the named plaintiff." *Postawko v. Missouri Dep't of Corr.*, 910 F.3d 1030, 1039 (8th Cir. 2018). "Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims and gives rise to the same legal or remedial theory." *Id*.

Plaintiffs submit that their experiences and resulting claims are typical of the class insofar as they received robocalls to their cellphones for debts they didn't owe, as would be the case for other class members. Medicredit doesn't challenge the motion on this criterion, and the Court finds it satisfied.

**Adequacy**

Rule 23(a)(4) requires that the named plaintiffs adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). The adequacy factor serves "to ensure due process for absent class members, who generally are bound by a judgment rendered in a class action." *Rattray v. Woodbury Cty., Iowa*, 614 F.3d 831, 835 (8th Cir. 2010). Class representatives and their attorneys must be able and willing to prosecute the action competently and vigorously, and each representative's interests must be sufficiently similar to those of the class that it is unlikely that their goals and viewpoints will diverge. *Cromeans v. Morgan Keegan & Co., Inc.*, 303 F.R.D. 543, 553 (W.D. Mo. 2014). "The experience and capability of the representative's counsel bears upon the adequacy of the representative." *Rattray*, 614 F.3d at 836.

Plaintiffs have submitted sworn declarations reflecting their willingness and ability to represent the interests of the class as a whole, to collaborate with counsel, and to testify at trial, all without any personal interests inconsistent with those of the class. (Doc. 101, Ex. 5-6). Plaintiffs' counsel have submitted declarations demonstrating that they possess exceptional credentials and have successfully litigated numerous class actions, including TCPA cases. (Doc. 101, Ex. 7-9). Medicredit doesn't challenge the motion on this criterion, and the Court finds it satisfied.

**Predominance**

"Predominance gauges the relationship between common and individual questions in a case." *Custom Hair Designs by Sandy v. Cent. Payment Co., LLC*, 984 F.3d 595, 601 (8th Cir. 2020). "The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Stuart*, 910 F.3d at 374-75. "Certification is appropriate if the common, aggregation-enabling issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues. *Id*. at 375. A class may be certified based on common issues even when some matters will have to be tried separately, such as damages or affirmative defenses peculiar to individual class members. *Id*.

As with ascertainability and commonality, Medicredit argues that individual inquiry will be necessary to "scrutinize" each class member's claim. Again, the Eighth Circuit squarely rejected this same reasoning by the district court in *Sandusky*, instead finding that the fax-recipient class, ascertained by the defendant's fax logs, met the predominance requirement. *Sandusky*, 821 F.3d 998. Medicredit fails to address this on-point binding authority.[4]

Rather, Medicredit cites an out-of-circuit case for the proposition that an overbroad class containing uninjured persons should not be certified. *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 677 (7th Cir. 2009). That case involved alleged violations of the Commodity Exchange Act and is inapposite on the facts. Moreover, it doesn't support Medicredit's position even generally, as the Seventh Circuit *affirmed* certification *despite* the defendant's argument that the class might include members who suffered no damage. To the extent *Kohen* is instructive at all,

---

[4] Medicredit also cites without elaboration *McKeage v. TMBC, LLC*, 847 F.3d 992, 999 (8th Cir. 2017). There, the Eighth Circuit affirmed certification even where identification of class members required an intensive file-by-file review of customer contracts. This case does not support Medicredit's position.

10

it confirms that the inclusion of uninjured class members doesn't preclude certification so long as the class definition isn't overbroad. *Id*. at 677-78. "[A]t the outset of the case many of the members of the class may be unknown, or if they are known still the facts bearing on their claims may be unknown. Such a possibility or indeed inevitability does not preclude class certification…" *Id*. at 677. Here, the class is limited to individuals who received a Medicredit robocall to their cellphones when the number was not assigned to a person with medical debt. The class definition itself is not overbroad. The fact that expert Peak's notice plan may initially reach some non-members is not fatal to certification.

In addition, Medicredit cites *St. Louis Heart Center*, discussed above, where the court decertified a class of fax recipients because there were no call logs to identify them. 2017 WL 2861878, at *5. That is not the case here, and more recent, published decisions in this state reject Medicredit's position on this criterion. In *Hand*, the defendant theorized that a recipient's companion could have paid the bill that created the business relationship, but the court refused to allow "such speculation to dictate the outcome of a class certification decision…" *Hand*, 456 F. Supp. 3d at 1150-51. Likewise in *Brust*, the court found predominance despite the defendant's argument that uncertainty over actual receipt would require individual inquiry. 343 F.R.D. at 593. Bound by *Sandusky* and consistent with these published district court rulings, the Court finds that the predominance criterion is satisfied.

### **Superiority**

The second inquiry under Rule 23(b)(3) requires courts to determine whether a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy," considering: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning

11

the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A)-(D).

Considering these factors, the Court readily finds that a class action is a superior method of resolving the claims of potentially hundreds of thousands of plaintiffs. (A) Given the nature of TCPA cases, individual class members have virtually no incentive or ability to maintain separate actions. (B) The class definition is intended to exclude any call recipients whose claims were released in the *Miles* case. For additional clarity, the Court will amend the class period to avoid any overlap with the *Miles* class. (C) This district is the proper forum as the place where Medicredit resides. (D) And, despite Medicredit's insistence that individual issues would render class litigation unmanageable, the Court is convinced that (1) Peak's notice plan will provide adequate notice to potential class members; (2) proper plaintiffs can be identified using and cross-referencing Medicredit's records; (3) the case can be presented to the jury with common evidence; and (5) damages can be ascertained from Medicredit's call logs.

## CONCLUSION

The Court finds that questions of law and fact common to the proposed class predominate over any individual matters, that Plaintiffs' claims are typical such that they can adequately represent the class, and that a class action is the superior method to resolve their common claims. This matter is therefore appropriate for class adjudication, and Plaintiffs' motion to certify the class will be granted, with an amendment of the class period to avoid any overlap with the *Miles* class. Pursuant to Rule 23(g), the Court will appoint Plaintiff's counsel as counsel for the class.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion for class certification is **GRANTED**.  (Doc. 101). The class shall consist of:

> All persons and entities throughout the United States (1) to whom Defendant placed a call in connection with a past-due medical debt, (2) directed to a number assigned to a cellular telephone service, but not assigned to a person with a past-due medical debt or their authorized representative, (3) with an artificial or prerecorded voice, (4) from July 8, 2022, through the date of class certification.

**IT IS FURTHER ORDERED** that Plaintiff's counsel is appointed counsel for the class.

Dated this 23rd day of January 2026.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE